UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

GENERAL ELECTRIC COMPANY               CIVIL ACTION

VERSUS                                 NO. _____

WEST FELICIANA PARISH HOSPITAL
SERVICE DISTRICT No. 1

### COMPLAINT

**NOW INTO COURT**, through undersigned counsel, comes *General Electric Company*, acting by and through its *GE Healthcare Division* ("*GE*"), and petitions this Honorable Court for relief as follows:

### Nature of the Action.

1.      This is an action pursuant to Louisiana Revised Statute §38:2020 on behalf of *GE* to: (1) enjoin *West Feliciana Parish Hospital Service District No.1* from executing a contract for Project No. 2016-0001-A with *Hitachi Medical Systems America*; (2) petition for a judgment declaring the award of Project No. 2016-0001-A violative of the Louisiana Public Bid Law; (3) petition for a writ of mandamus instructing the Hospital to award the bid to *GE* pursuant to the Public Bid Law; and (4) seek an award of damages, including attorney's fees pursuant to La.R.S. §38:2220.4.

### Parties

2.      General Electric Company's Healthcare Division has it principle place of business at 500 W. Monroe St., Chicago, Illinois, 60661.

3.     General Electric Company is a New York corporation headquartered at 3135 Easton Turnpike, Fairfield, Connecticut, 06828. It has been announced that the corporate office will be moving to Boston, but the address is unknown at this time.

4.     General Electric Company is publicly traded. Upon information and belief, no single shareholder owns more than 10% of General Electric Co., stock.

5.     *West Feliciana Parish Hospital Service District No.1* ("Hospital") is a political subdivision of the State of Louisiana doing business as West Feliciana Parish Hospital.

6.     The Hospital is located at 5266 Commerce Street, St. Francisville, Louisiana, 70775.

## Jurisdiction

7.     This Court has jurisdiction over this action pursuant to U.S.C.A. §1332 which creates diversity jurisdiction for claims between citizens of different states.

8.     *GE's* Healthcare Division has its principle place of business in Chicago, Illinois, and its parent, General Electric Company is a citizen of Connecticut, or Massachusetts, depending on the current legal status of the headquarters move.

9.     *GE* is not a citizen on Louisiana.

10.    The Hospital is a citizen of Louisiana, with its principle place of business in St. Francisville.

11.    The public bid process at issue was conducted in Louisiana.

12.     There is complete diversity of citizenship between the plaintiff and the defendant.

13.     The dispute, exclusive of interest and costs, exceeds $75,000.

### Invitation For Bids No. 2015-0001

14.     On December 17, 2015, the Hospital publicized an Invitation For Bids ("IFB"), Project No. 2015-001, for qualified vendors to provide medical equipment consisting of a MRI, CT Scanner, X-Ray Unit, General RAD, Digital, and X-Ray Unit, RAD, Fluoro, Digital ("Equipment") including all components and services necessary to integrate the Equipment with the Hospital's other clinical and business software and systems.

15.     Three bids were received timely, including a bid by *GE*.

16.     On February 4, 2016, the Hospital rejected all three bids due to alleged deficiencies.

17.     *GE* was informed by the Hospital that its bid was rejected because it did not acknowledge Addendum No. 1 to the IFB. This Addendum was the Hospital's response to questions presented by bidders.

18.     The pertinent paragraph of *GE's* bid proposal reads as follows:

> *Bidder **MUST** acknowledge all addenda. Bidder acknowledges receipt of the following ADDENDA (please identify by addenda number):*

19.     Satisfying the bid only required that *GE* write the number "1" on the bid form at the space provided. Since all other bidders were disqualified, *GE* would have been legally entitled to the contract had its bid been accepted.

20.     Accepting the highly technical nature of the Public Bid Law, and the laws mandating strict compliance with the bid procedures and specifications, *GE* did not protest the decision to reject its bid based on this technicality.

21.     Hitachi also submitted a bid response.

22.     Hitachi's bid response acknowledged several Equipment specifications it could not meet.

23.     Hitachi's bid proposal for 2015-001 was rejected by the Hospital.

## Invitation For Bids No. 2016-0001

24.     On February 11, 2016, the Hospital issued another IFB, Project No. 2016-001-A. This IFB again sought bids for the same Equipment: "state-of-the-art imaging equipment consisting of a MRI, CT Scanner, X-Ray Unit, General RAD, Digital and XRay Unit, RAD, Fluoro, Digital."

25.     Addendum No. 1 to IFB No. 2016-001-A, modified portions of the IFB and announced amendments to the Equipment specifications (Exhibit A thereto) would be published soon.

26.     On February 16, 2016, the amended Exhibit A detailing the modified Equipment specifications was published *via* Addendum No. 2.

27.     The Equipment specification of Exhibit A to Addendum No. 2 were virtually identical to Exhibit A of IFB No. 2015-0001 from December 17, 2015.

28.     The IFB at this point still requested bids for equipment equal to or better than that set forth on Exhibit A attached to the IFB.

29.     On February 25, 2016, the Hospital amended the Equipment specifications found in Exhibit A, yet again, *via* Addendum No. 3. Exhibit A was amended and renamed Exhibit A-1.

30.     The version of the Equipment specifications included in Exhibit A-1 removed several of the specifications that Hitachi was unable to meet in regard to IFB 2015-0001 of the previous December.

31.     The revision of Exhibit A into Exhibit A-1 helped Hitachi become more responsive to the IFB.

32.     The Hospital received the following bids timely on March 7, 2016: (i) *Hitachi Medical Systems America* ("Hitachi") in the amount of $2,165,900; (ii) *GE* in the amount of $2,396,763.66; and (iii) Siemens Medical Solutions USA in the amount of $2,587,023.

33.     Philips Healthcare submitted a bid after the 1:00PM deadline and the Hospital refused to consider the bid as untimely, again, due to the highly restrictive nature of the public bid laws.

34.     The Hospital determined that Hitachi's bid was responsive to IFB Project No. 216-0001-A, and was the lowest cost responsive bid.

## Specification failures waived for Hitachi's benefit: *Transmit/Receive Head Coil - MRI*

35.     Addendum No. 3 (February 25, 2016) modified the Equipment specifications. The third version of the Equipment specifications, however, now

captioned Exhibit A-1, still included the following Equipment specification for MRI equipment:

> • T/R Body Coil and T/R Head Coil: System to include a transmit-and-receive RF body coil and a split-top transmit-and-receive RF head coil. The RF body coil is integrated into a single module with the gradient coil, which is both water and air cooled.

36.     In January, Hitachi responded to the same Equipment specification in IFB 2015-0001 by stating: "Equivalent. T/R quadrature body coil Multi-channel head coil (receive only)."

37.     The "receive only" head coil Hitachi proposed did not meet or exceed the "transmit and receive" head coil MRI Equipment specification at that time.

38.     Prior to the submission of the March 2016 IFB responses, the parties were allowed to ask questions about the IFB Equipment specifications.

39.     Hitachi asked the following question regarding this particular MRI Equipment specification, which Hitachi had previously acknowledged their proposed equipment could not satisfy:

> **Hitachi Question 1.** MRI - one of the specifications for the MRI system states, "System to include a transmit-and-receive RF body coil and a split-top transmit-and-receive RF head coil". Not all vendors have and / or include a transmit-and-receive RF head coil. The vendors that do include this type is coil is because they use this coil to perform QA procedures. The vendors that do not use a transmit-and- receive head coil for QA produces perform their QA procedures via the transmit -and-receive RF body coil because using the transmit-and-receive RF body coil examines more of the entire system. In fact the vendors that provide a transmit-and-receive RF head coil typically will have their service engineers use the transmit-and-receive RF body coil to determine if the system is performing within manufacture's specifications. Therefore, is

this an example of "better than or equal to" for a vendor not to include a transmit-and-receive RF head coil if they do not need this coil for QA procedures?

40.     On March 1, 2016, the Hospital responded to written questions presented by the prospective bidders regarding IFB 2016-0001-A and Exhibit A-1's Equipment specifications. The Hospital specifically responded to the above inquiry from Hitachi, as follows:

> **Owner Response to Hitachi Question 1.** Exhibit A-1, Equipment Specifications, sets forth the minimum requirements and denotes the quality standard of the product desired by Owner. Equivalent products are acceptable. Vendors should submit supporting documentation, as part of its submission of Exhibit C, to Owner in order for Owner to fully evaluate the equipment being bid and make such a determination.

41.     The Hospital did not change the bid specification questioned by Hitachi.

42.     Hitachi did not challenge the equipment specification or otherwise seek to have the IFB modified to change the specification for a "transmit-and-receive RF body coil and a split-top transmit-and-receive RF head coil." Hitachi had plenty of time to challenge the bid specification between the December 2015 IFB and their March 2016 IFB proposal.

43.     In fact, several other MRI Equipment specifications that Hitachi could not satisfy in the 2015-0001, were omitted from IFB 2016-0001-A's second specification list (designated Exhibit A-1 thereto). Those changes helped cure some of Hitachi's instances of non-responsiveness in the in the initial bid proposal.

44.     Hitachi filed its bid proposal by the March 7, 2016, deadline. It proposed the

same Hitachi Echelon Oval MRI machine it had proposed in response to the

December 2015 IFB (No. 2015-001). In response to the Equipment specification of:

"T/R Body Coil and T/R Head Coil: System to include a transmit-and-
receive RF body coil and a split-top transmit-and-receive RF head coil.
The RF body coil is integrated into a single module with the gradient
coil, which is both water and air cooled

Hitachi responded "Equivalent," but further stated the following regarding the

Echelon Oval equipment:

> T/R Body Coil - included
> T/R Head Coil - *not required*
>
> Hitachi uses the T/R Body Coil to do QA procedures instead of
> the head coil. QA testing using the body coil is a more robust
> method where the entire system is evaluated not just a small
> portion of the system. [*emphasis added*]

45.     By responding that an Equipment specification was "*not required*,"

Hitachi admitted that its Echelon Oval product did not meet this material

specification, and that rendered Hitachi's bid nonresponsive.

46.     IFB Project No. 2016-001-A states that "[b]idder shall make no additional

stipulations on this bid form, nor qualify the bid and [sic] any other manner."

47.     Hitachi did not effectively challenge or otherwise protest the use of the

Transmit-and-Receive Head Coil specification for the MRI equipment before the bid

response was opened, in spite of its full knowledge since December 2015 that the

specification could not be satisfied by Hitachi's proposed Echelon Oval MRI

equipment.

48.     Once a Public Bid is published, its specifications cannot be modified to
benefit one bidder over others, and substantive specifications cannot be waived to
benefit one bidder.

49.     Challenges to the specifications or form of the Public Bid must be filed
before responses are opened. Hitachi never publicly challenged any specifications.
Instead, it was allowed to submit a non-responsive bid proposal and have the non-
responsive elements waived.

50.     Had GE been allowed to waive or modify the substantive requirement for:

> T/R Body Coil and T/R Head Coil: System to include a transmit-and-
> receive RF body coil and a split-top transmit-and-receive RF head
> coil. The RF body coil is integrated into a single module with the
> gradient coil, which is both water and air cooled

to "T/R Body Coil that uses the T/R Body Coil to do QA procedures instead of the
head coil" as Hitachi did, or to amend specifications in other ways, *GE* could have
specified another, potentially cheaper, product. Instead, *GE* proposed a product that
met the published specification, while Hitachi was allowed to propose a product that
failed to meet the required specification.

51.     This decision exceeds the discretion allowed by law for public bids. *See, e.g.,*
*Wallace C. Drennan v. Sewerage & Water Bd.*, 798 So. 2d 1167 (La.App. 4 Cir. Oct.
3, 2001) "The Public Bid Law is intended to advance the interests of the taxpaying
citizens and to prevent public officials from awarding contracts on an arbitrary
basis. La. R.S. 38:2211, *et seq*. A public entity cannot waive deviations that are
substantive in nature when awarding a public contract to the lowest responsible
bidder. *Boh Bros. Const. Co, L.L.C. v. Dept. of Transp. and Development*, 97 0168

  
(La. App. 1 Cir. 7/14/97), 698 So. 2d 675, *writ denied*, 97-2113 (La. 11/21/97), 703 So. 2d 1309.")

52.      Moreover, contrary to what Hitachi claimed, The Transmit-and-Receive Head Coil in an MRI is also necessary for advanced imaging of patients with implants. Thus, this specification has material functional significance. An MRI lacking this capability will limit the number of patients with implants that may be treated by the Hospital. The published bid required this advanced feature, and *GE* submitted a responsive bid that addressed this requirement.

53.      This waiver of the Transmit-and-Receive Head Coil specification, after the submission date for responsive bid proposals, gave Hitachi an unfair advantage in the bid process, in violation of the Public Bid Law.

### *Receiver dynamic range - MRI.*

54.      Exhibit A-1 included the same MRI receiver dynamic range specifications as the prior two iterations of Exhibit A: "1 Hz BW: >165db."

55.      In response to the same specification in the December 2015 IFB 2015-0001, Hitachi responded "Equivalent" while acknowledging its proposed equipment only reached 700 kHz (or 0.7 Hz). This capability is 30% below the minimum standard set by the publicly announced specification.

56.      Exhibit A-1, the operative Equipment specification list, used the same 1 Hz requirement. And IFB Project No. 2016-001-A expressly stated that "vendor *must* provide product that is better than or equal to what is described" in Exhibit A-1. (emphasis added)

57.     In its March 2016 bid proposal, Hitachi again responded to the same Equipment specification with: "Equivalent…700 kHz."

58.     In no way is 700 kHz better than or equal to 1000 kHz (or 1 Hz).

59.     IFB Project No. 2016-001-A states that "[b]idder shall make no additional stipulations on this bid form, nor qualify the bid and [sic] any other manner."

60.     The MRI equipment proposed by *GE* met this specification.

61.     *GE* could have proposed other equipment if this advanced imaging tool was not a required specification.

62.     By selecting Hitachi as the lowest responsive bidder, the Hospital effectively waived the requirement for a MRI receiver dynamic range specifications of 1 Hz BW: >165db or better.

63.     This waiver of the 1 Hz receiver dynamic range specification for Hitachi, after the submission date for responsive bid proposals, gave Hitachi an unfair advantage in the bid process, in violation of the Public Bid Law.

### Receiver resolution - MRI.

64.     Exhibit A-1 included the same receiver resolution specifications for the MRI equipment as the prior two iterations of Exhibit A, specifically, that the receiver must be able to reach or exceed a resolution of 32 bits.

65.     In response to the same specification in the December 2015 IFB 2015-0001, Hitachi responded "Equivalent" while acknowledging its proposed equipment only reached 16 bits, or one-half the minimum receiver resolution standard set by the publicly announced specification.

66.     Exhibit A-1, the operative Equipment specification list, kept the same 32 bit receiver resolution requirement for the MRI.

67.     IFB Project No. 2016-0001-A expressly stated "vendor must provide product that is better than or equal to what is described" in Exhibit A-1.

68.     IFB Project No. 2016-001-A states that "[b]idder shall make no additional stipulations on this bid form, nor qualify the bid and [sic] any other manner."

69.     In its March 2016 bid proposal, Hitachi again responded to the same Equipment specification with: "Equivalent...16 bits."

70.     Sixteen (16) bit resolution is not better than or equal to 32-bit resolution.

71.     By selecting Hitachi as the lowest responsive bidder, the Hospital effectively waived the substantive requirement for a MRI receiver able to meet or exceed a resolution of 32 bits.

72.     *GE* could have proposed other equipment if this advanced imaging tool was not a required specification.

73.     This waiver of the 32-bit receiver resolution specification for Hitachi, after the submission date for responsive bid proposals, gave Hitachi an unfair advantage in the bid process, in violation of the Public Bid Law.

### *Chemical Shift Direction Selection - MRI*

74.     Exhibit A-1 included the same Chemical Shift Direction Selection specifications for the MRI as the prior two iterations of Exhibit A.

75.     In response to the same specification in the December 2015 IFB 2015-0001, Hitachi responded "Not Available."

76.     Exhibit A-1, the operative Equipment specification list, maintained this requirement.

77.     IFB Project No. 2016-0001-A expressly stated "vendor must provide product that is better than or equal to what is described" in Exhibit A-1.

78.     In its March 2016 bid proposal, Hitachi again responded "Not Available" to the Chemical Shift Direction Selection specification. This alone renders the Hitachi bid nonresponsive.

79.     By selecting Hitachi as the lowest responsive bidder, the Hospital waived the requirement for a MRI with Chemical Shift Direction Selection.

80.     *GE* could have proposed other equipment if this advanced imaging tool was not a required specification.

81.     The waiver of the substantive Chemical Shift Direction Selection specification for Hitachi, after the submission date for responsive bid proposals, gave Hitachi an unfair advantage in the bid process, in violation of the Public Bid Law.

### *Automatic and continuous correction of X-ray beam shape - CT.*

82.     Exhibit A-1 included the same X-ray beam shape correction specifications for the CT Scanner equipment as the prior two iterations of Exhibit A.

83.     Specifically, the IFB mandated a product that possessed capabilities equal to, or better than: "[a]utomatic and continuous correction of X-ray beam shape to block unused x-ray at beginning and end of helical scan."

84.     In response to the same specification in the December 2015 IFB 2015-0001,

Hitachi responded "Not Included. Does include selectable shaped filters to reduce

bead width and dose for appropriate anatomy size."

85.     Exhibit A-1, the operative Equipment specification list, maintained this

requirement.

86.     IFB Project No. 2016-0001-A expressly stated "vendor must provide product

that is better than or equal to what is described" in Exhibit A-1.

87.     In its March 2016 bid proposal (2016-001-A), Hitachi responded to the same

X-ray beam shape specification as follows:

> Equivalent. Automatic and Continuous correction (also known
> as Tracking collimator) only reduces dose on helical scans
> when the start / end point of the scan do not align with the
> rotation of the tube. However, Lateral shifting table is a
> technology that will automatically center the area of interest
> in the center of the gantry aperture, improving image quality,
> and allowing use of narrower fan-beam collimation. Narrower
> collimation reduces dose throughout the entire scan, not just
> when the tube rotation and start/end points are misaligned, as
> with Tracking Collimator. Lateral shift table is not limited to
> helical scans, but is effective at reducing dose for both axial
> and helical scans. Additionally, selectable shaped filters are
> included to reduce beam width and dose for the appropriate
> anatomy size.

88.     Hitachi's qualified response to the "meets or exceeds" question simply

argues that a lateral shifting patient table is an alternative option to "automatic

and continuous correction of X-ray beam shape."

89.     IFB Project No. 2016-001-A states that "[b]idder shall make no additional

stipulations on this bid form, nor qualify the bid and [sic] any other manner."

90.     Hitachi's response to this specification is functionally the same "not required" response given regarding the dual Transmit-and-Receive coils for the MRI equipment above.

91.     Hitachi did not claim that a lateral shift table was equivalent to automatic and continuous correction of X-ray beam shape in December when proposing the same CT Scanner equipment for the same Equipment specification regarding 2015-0001.

92.     Hitachi acknowledged it did not meet this specification by responding "***not included***" to the same Equipment specification just two months earlier regarding IFB 2015-0001. Hitachi failed to meet or exceed this required specification as well.

93.     In selecting Hitachi as the winning bidder, the Hospital effectively waived this substantive specification and substituted it with a lateral shift table, after the bid responses had been tendered.

94.     This waiver was repeated for a related specification of "[t]racking collimator hardware and software for x-ray beam tracking to minimize patient dose."

95.     In response to this specification, Hitachi stated "Equivalent. Repeat question of Automatic & Continuous correction…Same as above." (*ellipsis in original*). In short, Hitachi stated that these two related specifications were not required, in Hitachi's opinion. That statement rendered Hitachi's bid nonresponsive.

96.     Other equipment could have been proposed by *GE* if this automatic and continuous correction of X-ray beam shape specification was not a required

specification for the CT Scanner, or if a lateral shift table was acceptable, or required.

97.     The waiver of the X-ray beam shape specification for Hitachi, gave Hitachi an unfair advantage in the bid process, in violation of the Public Bid Law.

### *Image file storage - CT.*

98.     Exhibit A-1 included the same image file storage specifications for the CT Scanner as the prior two iterations of Exhibit A.

99.     This Equipment specification states the CT Scanner shall have, or exceed, "250,000 uncompressed 512 x 2 image file storage and 3,250 scan rotations or 1,500 scan data files, or up to 300 exams."

100.    In response to the same specification in the December 2015 IFB 2015-0001, Hitachi responded "Meet. 200,000 uncompressed 512 x 512 images, plus 4,700 scan rotations, plus 9.4GB removable DVD's that store 16,000 images each."

101.    Exhibit A-1, the operative Equipment specification list, maintained this requirement and Hitachi responded with the same inadequate response in its March 2016 bid proposal.

102.    IFB Project No. 2016-A expressly stated "vendor must provide product that is better than or equal to what is described" in Exhibit A-1.

103.    Hitachi's proposed Scenaria 128 SE CT Scanner has internal storage for 200,000 512 x 512 images. But IFB Project No. 2016-A Exhibit A-1, for the third time, states that 250,000 files must be stored. Hitachi misses this storage requirement by 25%, yet claims its proposal "meets" the specification.

104.    *GE's* proposed equipment met or exceeded this storage specification.

105.    By selecting Hitachi as the lowest responsive bidder, the Hospital effectively waived the requirement for a CT Scanner with storage for 250,000 uncompressed 512 x 2 image file storage and 3,250 scan rotations or 1,500 scan data files, or up to 300 exams, or better.

106.    The waiver of the image storage size specification for Hitachi, after the submission date for responsive bid proposals, gave Hitachi an unfair advantage in the bid process, in violation of the Public Bid Law.

## Claim I
### *Permanent Injunction*

107.    The above and foregoing paragraphs are incorporated, as if stated here in full.

108.    *GE* moves this Honorable Court to permanently enjoin *West Feliciana Parish Hospital Service District No.1* from executing a contract for Project No. 2016-0001-A with *Hitachi Medical Systems America.*

109.    If the contact has already been executed between the Hospital and Hitachi, *GE* moves that this Court enjoin further performance of the contact by either party.

110.    Hitachi's bid proposal is non-responsive to IFB 2016-0001-A.

111.    IFB Project No. 2016-A expressly stated "vendor must provide product that is better than or equal to what is described" in Exhibit A-1.

112.    Hitachi had months to consider the deficiencies of its Echelon Oval MRI and its Scenaria 128 SE CT Scanner before the responsive deadline for the bid.

113.    Hitachi could have petitioned the Hospital to change specifications, but chose not to, or was unsuccessful in so doing.

114.    Hitachi instead submitted a bid that declared certain bid specifications "not required" and stated "meet" or "equivalent" for other specifications that the proposed equipment could not meet or exceed.

115.    Waiving these specifications for Hitachi resulted in *GE* submitting a bid proposal in response to Equipment specifications that were more onerous than the bid specifications Hitachi was held to.

116.    *GE* should have been informed if the specifications were not actually specifications that must be met or exceeded.

117.    The Hospital's failure to strictly adhere to the required specifications it created and published, violated the Public Bid Laws.

118.    Hitachi and the Hospital should be enjoined from performance of the contract terms.

## Claim II
### *Declaratory Judgment*

119.    *GE* petitions this Court for a judgment declaring the award of Project No. 2016-0001-A to Hitachi violative of the Louisiana Public Bid Law.

120.    Hitachi's bid proposal is non-responsive to IFB 2016-0001-A.

121.    IFB Project No. 2016-A expressly stated "vendor must provide product that is better than or equal to what is described" in Exhibit A-1. Hitachi blatantly

avoided this by stating items were not required, or could be substituted for other products that clearly failed to meet or exceed the required specifications.

122.     The IFB also states that a "[b]idder shall make no additional stipulations on this bid form, nor qualify the bid and [sic] any other manner." Hitachi made extensive qualifications and stipulations in its proposal as to why certain specifications could be avoided or were not really required.

123.     Hitachi had months to consider the deficiencies of its Echelon Oval MRI and its Scenaria 128 SE CT Scanner before the responsive deadline for the bid.

124.     Hitachi could have petitioned the Hospital to change specifications, but chose not to, or was unsuccessful in its efforts.

125.     Hitachi instead submitted a bid that declared certain bid specifications "not required" and stated "meet" or "equivalent" for other specifications that the proposed equipment could not meet or exceed.

126.     The Hospital exceeded its discretion by effectively waiving specific specifications it included in the publicly advertised bid.

127.     Waiving these specifications for Hitachi resulted in *GE* submitting a bid proposal in response to Equipment specifications that were more onerous than the bid specifications Hitachi was held to.

128.     *GE* should have been informed that the stated specifications were not actually binding specifications within the definition of better than, or equal to.

129.     The Hospital was legally bound to reject Hitachi's bid as non-responsive.

130.    Hitachi's failure to propose equipment that met or exceeded the stated specifications was a more egregious violation of the Public Bid Law process than *GE's* failure to write the number "1" on the IFB 2015-0001 Bid Response Form. That clerical oversight caused *GE's* bid to be rejected. Hitachi's bid for IFB 2016-0001-A should have been rejected as technically non-responsive.

131.    The Hospital's failure to conduct the bid process in an equal manner violates the Public Bid Laws.

132.    This Honorable Court should issue a declaratory judgment holding that the award of IFB 2016-0001A to Hitachi violates the Public Bid Law.

## Claim III
### *Writ of Mandamus*

133.    *GE* petitions this Court for a writ of mandamus directing the Hospital to award the contract for IFB 2016-0001A to *GE* as the lowest responsive and responsible bidder, according to the Public Bid Law.

134.    *GE* submitted a bid proposal that met all the specifications set forth in the publicly advertised bid.

135.    *GE* was the second lowest bid behind Hitachi. The Hitachi bid was non-responsive and the Hospital lacked the discretionary power to waive Hitachi's non-responsiveness.

136.    *GE* is therefore the lowest responsive bidder, and must be awarded the contract pursuant to the Public Bid Law.

137.     The award of the bid contract to *GE* is non-discretionary and therefore a ministerial act directed by the Public Bid Law.

138.     As a ministerial act, this Court may compel the Hospital to follow the Public Bid Law and execute a contract with *GE* for Project No. 2016-0001A.

## Claim IV
### *Damages costs and attorney's fees.*

139.     *GE* petitions this Court to award *GE* all damages incurred, including costs and attorney's fees, as a result of the Hospital's failure to reject Hitachi's bid as non-responsive.

140.     *GE* committed considerable effort and expense to responding to IFB 2016-0001-A.

141.     *GE* lost the profits it otherwise would have enjoyed had it been awarded the contract, as the lowest responsive bidder to IFB 2016-0001-A.

142.     *GE* has incurred legal fees and costs associated with its challenge of the award of Project No. 2016-0001-A.

143.     Pursuant to La.R.S. §38:2220.4, a challenging party who shows the award of a contact is in violation of La.R.S. § 38:2212.1, is entitled to an award of costs and attorney's fees.

144.     *GE* has incurred costs and attorney's fees as a result of the Hospital's failure to properly reject Hitachi's bid as non-responsive.

145.     *GE* should be awarded these expenses, as specified by the Public Bid Law.

146.    *GE* should also be awarded the damages in it incurred as a result of the Hospital's failure to properly reject Hitachi's bid as non-responsive.

**Wherefore**, *General Electric Company*, through its *GE Healthcare Division,* respectfully moves this Honorable to award it the following relief:

(1) enjoin *West Feliciana Parish Hospital Service District No.1* from executing a contract for Project No. 2016-0001-A with *Hitachi Medical Systems America,* and/or enjoin both from performing under the terms of the contract;

(2) a judgment declaring the award of Project No. 2016-0001-A violative of the Louisiana Public Bid Law;

(3) a writ of mandamus instructing the Hospital to award the bid to *GE* pursuant to the Public Bid Law; and

(4) an award of damages, including attorney's fees pursuant to La.R.S. §38:2220.4.

Respectfully submitted this _5_ day of July, 2016, at Baton Rouge, Louisiana.

> **Davillier Law Group, LLC**
>
> Daniel E. Davillier (La. 23022)
>     *DDavillier@DavillierLawGroup.com*
> Charles F. Zimmer II (T.A.) (La. 26759)
>     *CZimmer@DavillierLawGroup.com*
> 1010 Common Street, Suite 2510
> New Orleans, Louisiana 70112
> Telephone: (504) 582-6998
> Facsimile: (504) 582-6985
>
> **Counsel for General Electric Co.**

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **GENERAL ELECTRIC COMPANY** | **CIVIL ACTION** |
| **VERSUS** | NO. _____ |
| **WEST FELICIANA PARISH HOSPITAL**<br>**SERVICE DISTRICT No. 1** | |

### CORPORATE DISCLOSURE STATEMENT

**NOW INTO COURT**, through undersigned counsel, comes *General Electric Company* and states as follows:

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, Plaintiff General Electric Company declares that it has no parent corporation and no publicly traded corporation currently owns 10% or more of its stock.

Respectfully submitted this 5 day of July, 2016, at Baton Rouge, Louisiana.

*Davillier Law Group, LLC*

Daniel E. Davillier (La. 23022)
    *DDavillier@DavillierLawGroup.com*
Charles F. Zimmer II (La. 26759)
    *CZimmer@DavillierLawGroup.com*
1010 Common Street, Suite 2510
New Orleans, Louisiana 70112
Telephone: (504) 582-6998
Facsimile: (504) 582-6985

*Counsel for GE Healthcare*